**KAZEROUNI LAW GROUP, APC**
Gor Antonyan, Esq. (354718)
gor@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**KAZEROUNI LAW GROUP, APC**
David J. McGlothlin (253265)
david@kazlg.com
301 E. Bethany Home Road, Suite C-195
Phoenix, Arizona 85012
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,*
Poghos Ghuyumjyan

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **POGHOS GHUYUMJYAN,**<br><br>**Plaintiff,**<br><br>v.<br><br>**BANK OF AMERICA, N.A;**<br>**CHEXSYSTEMS, INC.; AND**<br>**EARLY WARNING SERVICES,**<br>**LLC;**<br><br>**Defendants.** | **Case No.:** 2:24-cv-10749-MEMF<br><br>**PLAINTIFF POGHOS GHUYUMJYAN'S OPPOSITION TO DEFENDANT EARLY WARNING SERVICES, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>**Date:** June 12, 2025<br>**Time:** 10:00 AM<br>**Location:** 350 West First Street, Los Angeles, CA 90012<br>**Courtroom**: 8B<br><br>**Judge:** Hon. Maame Ewusi-Mensah Frimpong |

- 1 -

PLAINTIFF POGHOS GHUYUMJYAN'S OPPOSITION TO DEFENDANT EARLY WARNING SERVICES, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 5

I.    EWS Cannot Escape Liability by Demanding Pre-Discovery Specificity and Minimizing Its Investigative Duties under the Fair Credit Reporting Act ............. 5

II.   EWS's Motion Fails to Satisfy the High Standard for Judgment on the Pleadings Under Rule 12(c) ................................................................................ 7

III.  EWS's Motion Must be Denied Because Plaintiff Stated a Plausible Claim for Relief under the FCRA ...................................................................... 8

  A.   EWS's "Checking Account Fraud" Notation on Plaintiff's Consumer Report Is Inaccurate and Misleading Under the FCRA ................................. 8

  B.   EWS Cannot Escape Liability by Claiming Its Reporting Is Not Objectively Verifiable When a Reasonable Investigation Should Have Been Completed by a Straightforward Application of Law to Facts...................... 14

  C.   Plaintiff Plausibly Alleges That EWS Failed to Follow Reasonable Procedures to Assure Maximum Possible Accuracy, and Is Not Required to Allege Specific Flaws in EWS's Internal Processes at the Pleading Stage........................................................................................................... 21

  D.   Plaintiff Plausibly Alleges That EWS Failed to Conduct a Reasonable Reinvestigation of Plaintiff's Dispute in Violation of 15 U.S.C. § 1681i............... 23

V.    Leave to Amend Should Be Freely Granted ..................................... 26

PLAINTIFF POGHOS GHUYUMJYAN'S OPPOSITION TO DEFENDANT EARLY WARNING SERVICES,
LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS

## TABLE OF AUTHORITIES

**Cases**

*Acton v. Bank One Corp.*, 293 F. Supp. 2d 1092 (D. Ariz. 2003)……………………...24

*Adams v. Early Warning Services, LLC*, No. 24-60550-CIV-DIMITROULEAS, 2024 U.S. Dist. LEXIS 203505 (S.D. Fla. Aug. 19, 2024)………………………………18,19

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)……...7,22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)……………………………………………………………………………………7

*Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876 (9th Cir. 2010)……………14,24

*Chavez v. United States*, 683 F.3d 1102 (9th Cir. 2012)………………………………...7

*Chavarria v. Equifax Info. Sols. LLC*, No. CV-19-02664-PHX-SRB, 2019 U.S. Dist. LEXIS 244320 (D. Ariz. Oct. 23, 2019)…………………………………………………10

*Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188 (9th Cir. 1989)…………………...7

*Finley v. Capital One*, No. 16-cv-01392-YGR, 2017 U.S. Dist. LEXIS 57645 (N.D. Cal. Apr. 14, 2017)……………………………………………………...……....26

*Fleming v. Pickard*, 581 F.3d 922 (9th Cir. 2009)…………………………………...7

*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009)…………....8,23

*Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329 (9th Cir. 1995)………...14,23

*Hebrank v. Early Warning Servs. LLC*, No. CV-24-03711-PHX-MTL, 2025 U.S. Dist. LEXIS 74002 (D. Ariz. Apr. 18, 2025)………………………………9,10,14,15,16

*Henderson v. Experian Info. Sols., Inc.*, 2025 U.S. Dist. LEXIS 54292 (C.D. Cal. Mar. 21, 2025)……………………………………………………………………….21

*Kelly Moore Paint Co., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2014 U.S. Dist. LEXIS 69948, 2014 WL 2119996 (N.D. Cal. 2014)……………………………7

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005)………...…………………………...10

*Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877 (9th Cir. 2011)…………………..…7

KAZEROUNI LAW GROUP, APC

1  *Martino v. Bank of Am., N.A., et al*., No. 23-cv-61780-WPD, 2024 U.S. Dist. LEXIS
2  175090 (S.D. Fla. Aug. 19, 2024)..............................................................18,19,20,21
3  *Nelson v. Ocwen Loan Servicing, LLC*, No. 3:14-cv-00419-HZ, 2014 U.S. Dist.
4  LEXIS 85451 (D. Or. June 23, 2014)...................................................................15
5  *Shaw v. Experian Info. Sols. Inc*., 891 F.3d 749 (9th Cir. 2018).........................8
6  *Stone v. Equifax Info. Servs., LLC*, No. 2:24-cv-00195-GMN-EJY, 2025 U.S. Dist.
7  LEXIS 17518 (D. Nev. Jan. 30, 2025)..................................................................14
8  *United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003)........................................9

9  **Statutes**

10  Cal. Civ. Code § 1785 ...........................................................................................4
11  15 U.S.C. §§ 1681e(b)........................................................................................4-22
12  15 U.S.C. §§ 1681i(a)(1) ..........................................................................4,5,22,23
13  15 U.S.C. §§ 1681i(a)(4) ..........................................................................4,5,22,24
14  15 U.S.C. §§ 1681i(a)(5)(A) .................................................................4,5,22,24,25

15  **Rules**

16  Fed. R. Civ. P. 12 ........................................................................................passim
17  Fed. R. Civ. P. 8 ..........................................................................................passim

18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF POGHOS GHUYUMJYAN'S OPPOSITION TO DEFENDANT EARLY WARNING SERVICES,
LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff Poghos Ghuyumjyan ("Plaintiff" or "Ghuyumjyan") hereby submits this Opposition to Defendant Early Warning Services, LLC's ("EWS") Motion for Judgment on the Pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and in accordance with the Court's Standing Order.

## MEMORANDUM OF POINTS AND AUTHORITIES

I.  **EWS Cannot Escape Liability by Demanding Pre-Discovery Specificity and Minimizing Its Investigative Duties under the Fair Credit Reporting Act**

This action arises from the unlawful conduct of Defendants Early Warning Services, LLC ("EWS"), Bank of America, N.A. ("Bofa"), and Chex Systems, Inc. ("ChexSystems") (collectively, "Defendants") in violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. ("FCRA"), and the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code §§ 1785 et seq. ("CCCRAA"). As detailed in the Complaint, Plaintiff asserts claims against EWS under FCRA §§ 1681e(b), 1681i(a)(1), 1681i(a)(4), and 1681i(a)(5)(A), arising from EWS's continued reporting of inaccurate, unsupported, and damaging information related to alleged "checking account fraud," and its failure to conduct a reasonable reinvestigation despite receiving a timely and well-documented consumer dispute. EWS now seeks to evade liability by demanding a level of factual specificity that is neither required under the law nor attainable without discovery. However, Plaintiff's allegations are not only sufficient under the federal pleading standard—they reflect the very type of consumer harm the FCRA was enacted to prevent.

With this Motion, EWS is attempting to seek judgment on the pleadings not because Plaintiff has failed to state a claim, but because Plaintiff cannot, at the pleading stage, describe EWS's internal procedures or reinvestigation process with the precision that only discovery will allow. EWS's Motion effectively asks the Court to dismiss the Complaint unless Plaintiff can allege the exact steps EWS took (or

PLAINTIFF POGHOS GHUYUMJYAN'S OPPOSITION TO DEFENDANT EARLY WARNING SERVICES, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS

1  failed to take) during its reinvestigation of Plaintiff's dispute—details that EWS alone

2  possesses. This is not what the federal pleading standard requires.

3      In reality, Plaintiff's allegations more than satisfy the required pleading

4  standard. The Complaint sets forth a clear chronology of events: Plaintiff was falsely

5  reported for "checking account fraud;" he sent a written dispute to EWS supported by

6  detailed documentation, none of which indicates any fraudulent activity on his part;

7  and EWS's boilerplate rejection of his dispute that failed to acknowledge or

8  meaningfully address the basis for EWS's reporting or evidence Plaintiff submitted.

9  (Complaint ¶¶ 28-38). These allegations support violations of FCRA §§ 1681e(b),

10  1681i(a)(1), 1681i(a)(4), and 1681i(a)(5)(A), which impose on EWS both a duty to

11  maintain reasonable procedures for maximum accuracy and to conduct a reasonable

12  reinvestigation upon receiving a consumer dispute.

13      Rather than grapple with these factual allegations, EWS attempts to reframe its

14  statutory obligations as nothing more than a ministerial relay of information between

15  Plaintiff and the furnisher, Bofa. But the FCRA imposes affirmative obligations on

16  consumer reporting agencies—obligations that go beyond simply forwarding disputes

17  and relaying whatever the furnisher responds. EWS cannot sidestep liability by

18  reducing its role to that of a conduit while disregarding the substance of Plaintiff's

19  dispute and the supporting documentation he submitted. Accepting such an

20  interpretation would render the reinvestigation requirement meaningless and

21  undermine the very protections the FCRA was designed to provide to ordinary

22  consumers.

23      At this stage, Plaintiff is not required to prove EWS's procedures were

24  unreasonable—only to plausibly allege facts that make the claim of unreasonableness

25  facially valid. Plaintiff has done so. Discovery will shed light on the adequacy of

26  EWS's policies and reinvestigation processes. To require more at this stage would

27  improperly erect an impossibly high barrier for FCRA plaintiffs—contrary to the

28

PLAINTIFF POGHOS GHUYUMJYAN'S OPPOSITION TO DEFENDANT EARLY WARNING SERVICES, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS

KAZEROUNI LAW GROUP, APC

liberal pleading standard of Rule 8 of Federal Rules of Civil Procedure. Therefore, EWS's Motion must be denied.

## II.    EWS's Motion Fails to Satisfy the High Standard for Judgment on the Pleadings Under Rule 12(c)

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotation marks omitted). A court must construe all factual allegations in the pleadings in the light most favorable to the non-moving party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

A motion under Rule 12(c) is considered "functionally identical" to a motion under Rule 12(b)(6). *Lyon v. Chase Bank USA, N.A*., 656 F.3d 877, 883 (9th Cir. 2011) (citing *Dworkin v. Hustler Magazine Inc*., 867 F.2d 1188, 1192 (9th Cir. 1989)). Accordingly, judgment on the pleadings should only be entered when a complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim is factually plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). If a motion for judgment on the pleadings is granted, a "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). However, "[a]s with a Rule 12(b)(6) motion to dismiss, a court granting judgment on the pleadings pursuant to Rule 12(c) should grant leave to amend unless it is clear that amendment would be futile." *Kelly Moore Paint Co., Inc. v. Nat'l Union Fire Ins.*

PLAINTIFF POGHOS GHUYUMJYAN'S OPPOSITION TO DEFENDANT EARLY WARNING SERVICES, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS

*Co. of Pittsburgh, PA*, 2014 U.S. Dist. LEXIS 69948, 2014 WL 2119996, at *3 (N.D. Cal. 2014).

## III. EWS's Motion Must be Denied Because Plaintiff Stated a Plausible Claim for Relief under the FCRA

### A. <u>EWS's "Checking Account Fraud" Notation on Plaintiff's Consumer Report Is Inaccurate and Misleading Under the FCRA</u>

15 U.S.C. § 1681e(b) provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). To state a claim under § 1681e(b), a consumer must show that a CRA prepared a report containing inaccurate information. *Shaw v. Experian Info. Sols. Inc*., 891 F.3d 749, 755 (9th Cir. 2018). Information is considered "inaccurate" when it is either "patently incorrect" or is "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Id*. at 756 (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009) (applying § 1681s-2(b) definition of "inaccurate" to § 1681e(b)).

First, EWS argues that its reporting was accurate because Plaintiff "admittedly" deposited an invalid check into his account. (EWS Mot. at 5). This argument misrepresents the allegations in the Complaint. The portion EWS references, Paragraph 25 of the Complaint, states: "Sometime afterward, Plaintiff received a notification from Bank of America that the check was returned unpaid." Nowhere in the Complaint does Plaintiff admit that the check was, in fact, returned unpaid, or that the funds were unavailable. He does not know whether that is true, and he simply alleges that this is what Bofa communicated to him. Plaintiff does not concede that the check was returned for insufficient funds, nor does he adopt that explanation for reporting as true.

Moreover, Plaintiff alleges that the repair shop did not know of any issues with the check and later issued an alternative form of payment to resolve the matter, which

1  strongly suggests that the shop was not attempting to avoid paying Plaintiff. (Compl.

2  ¶ 25). There is no allegation—nor any reasonable inference—that Plaintiff engaged in

3  any fraudulent activity. To the contrary, Plaintiff has made clear that he does not

4  know why EWS reported him for "checking account fraud," and EWS appears to be

5  speculating that it must have been due to the returned check. Therefore, EWS's

6  speculative interpretation of the events at issue is not only unsupported by the

7  pleadings—it underscores why judgment on the pleadings is improper. At most, EWS

8  itself has identified a disputed issue of fact that must be resolved through discovery,

9  not through a Rule 12(c) motion.

10      Second, EWS attempts to justify its inaccurate reporting by attaching a copy of

11  Plaintiff's EWS consumer report and relying heavily on its own self-serving

12  definition of "Checking Account Fraud" to argue that its reporting was accurate.

13  (EWS Mot. at 5; Exhibit 1). But this particular tactic is improper at this stage of the

14  litigation and has already been rejected by another Court in *Hebrank v. Early*

15  *Warning Servs. LLC*, No. CV-24-03711-PHX-MTL, 2025 U.S. Dist. LEXIS 74002

16  (D. Ariz. Apr. 18, 2025). There, just as here, EWS attempted to resolve factual

17  disputes about the meaning and effect of its reporting language by attaching and

18  relying on documents outside the Complaint. No. CV-24-03711-PHX-MTL, 2025

19  U.S. Dist. LEXIS 74002, at *5 (D. Ariz. Apr. 18, 2025). The Court in *Hebrank*

20  refused to consider such material, holding that doing so would convert the motion

21  into one for summary judgment, which was not appropriate at the Rule 12 stage. *Id.* at

22  6-7.

23      The Ninth Circuit has made clear that a Court generally may not consider

24  documents outside the complaint when ruling on a motion to dismiss, except under

25  the narrow "incorporation by reference" doctrine. *See United States v. Ritchie*, 342

26  F.3d 903, 908 (9th Cir. 2003). That doctrine only applies where the plaintiff refers

27  extensively to the document, or the document forms the basis of the plaintiff's claim.

28

KAZEROUNI
LAW GROUP, APC

1  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). But neither of those
2  conditions is met here. Plaintiff did not attach the EWS report to the Complaint, nor
3  does the Complaint depend on the language or interpretation of EWS's internal
4  definitions.

5      As the Court explained in *Hebrank*, citing *Chavarria v. Equifax Info. Sols.*
6  *LLC*, the fact that a defendant submits a credit report does not mean it can be
7  considered at the pleading stage—particularly where the plaintiff "does not reference
8  or rely on" it and where the report raises factual disputes. *Chavarria*, No. CV-19-
9  02664-PHX-SRB, 2019 U.S. Dist. LEXIS 244320, at *2–3 (D. Ariz. Oct. 23, 2019).
10  The Court in *Hebrank* concluded that it "cannot consider [the EWS consumer report]
11  without converting EWS's Motion to Dismiss to a summary judgment motion, which
12  it does not find prudent at this stage in the litigation." No. CV-24-03711-PHX-MTL,
13  2025 U.S. Dist. LEXIS 74002, at *6-7 (D. Ariz. Apr. 18, 2025).

14      The same reasoning applies here. EWS cannot circumvent the pleading
15  standard by smuggling in its preferred narrative through documents not incorporated
16  into or relied on in Plaintiff's Complaint—especially where, as here, the report and its
17  terminology are themselves central to the dispute. Whether EWS's definition of
18  "checking account fraud" is reasonable, and whether the information it reported was
19  misleading or inaccurate in context, are questions of fact—not matters that can be
20  resolved on a Rule 12 motion by attaching documents and declaring the issue settled.
21  This Court, like the court in *Hebrank*, should reject that approach.

22      However, in the unlikely event that this Court decides to consider the Exhibit 1
23  to EWS's Motion, EWS's argument must still fail. According to EWS, the mere fact
24  that a check was allegedly returned unpaid—regardless of any accompanying
25  circumstances—was sufficient grounds to brand Plaintiff as engaging in "checking
26  account fraud." Even assuming, *arguendo*, that the check was invalid, which Plaintiff
27  does not concede, this position is untenable. Under EWS's theory, any consumer who

28

KAZEROUNI LAW GROUP, APC

1  innocently deposits a check from a third party—only to have it bounce through no

2  fault of their own—can be labeled a fraudster and blacklisted from the banking

3  system. In other words, EWS believes that financial ruin is an appropriate

4  consequence for consumers who unknowingly deposit a check that later bounces.

5  This is not only unreasonable, but also absurd. Such a position flips the presumption

6  of good faith on its head and would leave consumers vulnerable to unjustified

7  punishment based on factors entirely outside their control. Yet this is the distorted

8  reality EWS asks this Court to adopt—a world where innocent conduct is

9  indistinguishable from fraud, and where a consumer's mere association with a

10 returned check becomes a basis for denying them access to essential banking

11 services.

12       Another point worth emphasizing is the broader consequence of EWS's

13 reporting rationale—specifically, the absurdity of applying it uniformly. According to

14 EWS, the mere return of a check for non-sufficient funds is sufficient to justify a

15 "checking account fraud" notation in a consumer's file. But if that standard were truly

16 and consistently applied, then millions of Americans would be labeled fraudsters.

17 While Plaintiff does not have access to a precise statistic, it is common knowledge—

18 and certainly reasonable to infer—that countless consumers have had checks

19 returned, throughout their lifetime, for insufficient funds through no fault of their

20 own. These situations arise from ordinary banking errors, timing issues, and account

21 miscommunications—not fraud. Yet under EWS's theory, all of those individuals

22 should have their accounts flagged as involving "checking account fraud" and be

23 effectively excluded from the banking system. That cannot be the standard, and it

24 certainly is not the practice. EWS's logic, taken to its natural conclusion, would result

25 in a national blacklist for routine account activity. This inconsistency alone casts

26 serious doubt on the reasonableness of EWS's procedures and underscores why

27 Plaintiff's § 1681e(b) claim must proceed.

28

KAZEROUNI
LAW GROUP, APC

1    EWS next argues that Plaintiff failed to allege sufficient facts to support his

2  assertion that he did not engage in fraudulent activity or that the check he deposited

3  was valid. (EWS Mot. at 5). But this argument is both legally flawed and factually

4  inaccurate. First, Plaintiff did plead that he did not engage in any fraud. Paragraph 30

5  of the Complaint clearly states: "Plaintiff did not participate in any fraudulent activity

6  and had no knowledge or reason to believe that any of his actions could be considered

7  'fraudulent.'" At this stage, that factual allegation must be accepted as true. Second,

8  EWS is attempting to impose an impossible burden by demanding that Plaintiff allege

9  facts to prove a negative—specifically, that he did not engage in fraud. But how does

10  a consumer allege facts about something that did not happen? Plaintiff has already

11  described, in detail, the steps he took: he deposited a check from a legitimate

12  business, received no indication of wrongdoing, and acted in good faith throughout

13  the process. (Compl. ¶¶ 21–30.) That is what millions of consumers do every day.

14  Nothing about Plaintiff's conduct remotely suggests fraud, and EWS offers no factual

15  basis to claim otherwise. The bottom line is this: Plaintiff affirmatively alleged that

16  he did not commit fraud, and nothing in the Complaint supports the conclusion that

17  he did. That is sufficient at the pleading stage. Thus, EWS's attempt to shift the

18  burden to Plaintiff to disprove fraud must be rejected.

19    EWS next contends that the phrase "checking account fraud" is too ambiguous

20  to convey a specific meaning and, therefore, is not misleading in such a way and to

21  such an extent that it can be expected to adversely affect credit decisions. (EWS Mot.

22  at 6). EWS even goes so far as to suggest that its participating financial institutions

23  would not have been misled by the term because they allegedly understand its

24  internal definition. (EWS Mot. at 6–7). This argument is not only implausible—it

25  defies common sense. The notation "checking account fraud" is unambiguous on its

26  face. It contains the word "fraud"—a term universally understood to imply deception

27  or intentional wrongdoing. A reasonable reader, especially a financial institution

28

PLAINTIFF POGHOS GHUYUMJYAN'S OPPOSITION TO DEFENDANT EARLY WARNING SERVICES,
LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS

KAZEROUNI
LAW GROUP, APC

evaluating a consumer's creditworthiness, would understand such a notation to suggest that the consumer engaged in some form of fraudulent activity involving a checking account. There is no reasonable interpretation under which the phrase could be viewed as benign or neutral. EWS cannot now rewrite the meaning of its own reporting language by pointing to supposed insider interpretations not openly shared with consumers or the public.

Plaintiff, on the other hand, has alleged real-world consequences flowing directly from this false and damaging notation. Multiple financial institutions denied him the ability to open a checking account, and those denials were specifically linked to the reporting of "checking account fraud" on his consumer reports. (Compl. ¶¶ 27, 59.) The idea that such reporting was harmless or inherently vague is belied not only by the plain language used, but by Plaintiff's allegations of actual harm he has already suffered as a result.

Overall, the facts, as alleged, are straightforward: Plaintiff deposited a check from a third party. That funds from that check were ultimately not transferred to Plaintiff—either because it was returned for insufficient funds, due to an error on Bofa's part, or some other factor. Shortly thereafter, Bank of America closed Plaintiff's account without explanation, and EWS reported Plaintiff for "checking account fraud." That is all that occurred. Nowhere in the Complaint is there any allegation—or even an implication—that Plaintiff engaged in deception, misrepresentation, or any form of fraudulent conduct. Based on these allegations, the "checking account fraud" label is flatly inaccurate and misleading.

EWS's Motion improperly attempts to shift the burden onto Plaintiff to fill in facts that are not and cannot be within his possession. Plaintiff has pleaded what he knows: he deposited a check in good faith—just as millions of consumers do every day—and was then labeled a fraudster. That label is devastating. It implies criminal or unethical conduct, and as Plaintiff has alleged, it has effectively barred him from

opening a checking account at any financial institution. (Compl. ¶¶ 27, 59.) There is no plausible basis on which EWS could have reasonably concluded that Plaintiff committed fraud. Plaintiff affirmatively alleges that no fraud occurred. EWS cannot invent a justification for its reporting post hoc, especially when the reported information had the clear effect of misleading financial institutions and causing serious financial and reputational harm.

B. <u>EWS Cannot Escape Liability by Claiming Its Reporting Is Not Objectively Verifiable When a Reasonable Investigation Should Have Been Completed by a Straightforward Application of Law to Facts</u>

Next, EWS argues that Plaintiff's FCRA claims fail because the alleged inaccuracy is not "objectively and readily verifiable." (EWS Mot. at 7). However, that argument fails once again, both factually and legally.

First, it is important to note that the reasonableness of the [investigative] procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases. *Guimond v. Trans Union Credit Info. Co*., 45 F.3d 1329, 1333 (9th Cir. 1995). Most often, the reasonableness of the procedures cannot be resolved on a Motion to Dismiss. *Hebrank v. Early Warning Servs. LLC*, No. CV-24-03711-PHX-MTL, 2025 U.S. Dist. LEXIS 74002, at *8 (D. Ariz. Apr. 18, 2025).

In its Motion, EWS relies on a flurry of non-binding case citations in an effort to justify its conduct—or more accurately, its inaction. Overall, it is true that credit reporting agencies are not judicial bodies and are not required to resolve complex legal disputes. *Carvalho v. Equifax Info. Servs*., LLC, 629 F.3d 876, 891 (9th Cir. 2010). However, that principle has its limits and does not mean that credit reporting agencies are not required by the FCRA to accurately report information derived from the readily verifiable and straightforward application of law to facts. *Stone v. Equifax Info. Servs., LLC*, No. 2:24-cv-00195-GMN-EJY, 2025 U.S. Dist. LEXIS 17518, at *7 (D. Nev. Jan. 30, 2025) (finding that the FCRA imposes a duty upon Defendant to accurately report information derived from reviewing bankruptcy dockets, PACER,

KAZEROUNI
LAW GROUP, APC

1  or publicly available data). Furthermore, it has been repeatedly held that there is a

2  need to insure that consumer reporting agencies exercise their grave responsibilities

3  with fairness, impartiality, and a respect for the consumer's right to privacy, and it is

4  unreasonable for a CRA to simply verify the creditor's position after receiving notice

5  from the consumer that the creditor's information may be suspect. *Nelson v. Ocwen*

6  *Loan Servicing, LLC*, No. 3:14-cv-00419-HZ, 2014 U.S. Dist. LEXIS 85451, at *11-

7  12 (D. Or. June 23, 2014).

8      Moreover, in *Hebrank v. Early Warning Servs. LLC*, EWS raised virtually the

9  same defense it asserts here—arguing that the plaintiff's FCRA claims were not

10  actionable because the allegedly inaccurate reporting related to "fraud and abuse,"

11  which, according to EWS, required a legal determination of the plaintiff's intent and

12  was therefore not "objectively and readily verifiable." No. CV-24-03711-PHX-MTL,

13  2025 U.S. Dist. LEXIS 74002, at *8 (D. Ariz. Apr. 18, 2025). The plaintiff in

14  *Hebrank* disagreed, arguing that the dispute involved straightforward factual

15  questions: whether Regions Bank actually accused her of fraud or abuse, whether she

16  used the relevant account during the disputed period, and whether she even

17  maintained the accounts in question. *Id*. The Court agreed with the plaintiff, rejecting

18  EWS's argument and holding that EWS had not shown that these matters required

19  legal conclusions. Instead, the Court found that the questions raised were based on

20  factual issues that were objectively and readily verifiable. *Id*.

21      The present case is materially indistinguishable. Here, as in *Hebrank*,

22  Plaintiff's claims center around factual disputes that do not require complex legal

23  adjudication. Among the key questions: Did Bank of America ever actually accuse

24  Mr. Ghuyumjyan of fraud? If so, what was the basis for that accusation, and was it

25  ever communicated to Plaintiff? Was there any factual justification for labeling the

26  deposited check as fraudulent? And was the check returned due to insufficient funds,

27  a fraud determination, or an internal processing error at Bank of America? All of

28

PLAINTIFF POGHOS GHUYUMJYAN'S OPPOSITION TO DEFENDANT EARLY WARNING SERVICES, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS

these are factual matters—precisely the kind of "objectively and readily verifiable" information that EWS is obligated to evaluate before publishing damaging notations like "checking account fraud."

Yet here, as in *Hebrank*, EWS appears to have accepted Bofa's input at face value, without any meaningful investigation or verification of the facts. Plaintiff has alleged that the only communications he received from Bofa were that the check was returned unpaid, and his account has been closed. (Compl. ¶¶ 25, 26). There is no allegation in the record suggesting Bofa ever accused Plaintiff of fraud—only that EWS later reported him as such. These are critical factual questions that go directly to the accuracy and reasonableness of EWS's reporting practices. Therefore, because the nature of the dispute in this case mirrors the factual issues at the heart of *Hebrank*, the reasoning in that case applies squarely here. The Court in *Hebrank* rejected EWS's argument that fraud-related notations are categorically non-verifiable and shielded from FCRA scrutiny. This Court should do the same.

In addition, and critically, Plaintiff's dispute to EWS was not a bare or conclusory dispute—it was supported by a robust set of documentation that, if reviewed with even minimal diligence, would have revealed that the "checking account fraud" designation was entirely unsupported. In his October 15, 2024 written dispute, Plaintiff provided EWS with a comprehensive packet of materials, including: (1) a detailed narrative explaining the circumstances surrounding the deposit and subsequent account closure; (2) a copy of his Bank of America account statement from February 17 to March 19, 2024, reflecting all relevant activity; (3) a copy of the ATM receipt from the March 6, 2024 deposit; (4) a copy of the returned check; (5) the letter from Bank of America notifying him of the account closure; and (6) a copy of his government-issued driver's license. (Compl. ¶ 33.)

Each of these documents, standing alone, cast doubt on the fraud label EWS ultimately reported. Taken together, they make it clear that there was no fraud—only

an ordinary banking transaction with an unfortunate outcome. Plaintiff's narrative laid out the full context, including the source of the check and his efforts to resolve the issue. The account statement showed consistent, legitimate activity with no indication of misuse or fraud. The ATM receipt confirmed that the deposit was accepted, suggesting no issues with the check at the time of deposit—something that would typically trigger a rejection if the check were suspicious. Plaintiff even included a copy of the returned check itself, which bore no facial indication of fraud or forgery. And finally, Bofa's closure letter, while confirming that the account was closed, made no mention of fraud.

EWS was not being asked to conduct a legal investigation or weigh competing interpretations of law. This was not a situation requiring any nuanced legal analysis. All EWS had to do was review the materials provided by Plaintiff and compare them to the reported fraud designation. Had it done so, it would have seen that there was no basis for the report. Yet, instead of engaging in a reasonable reinvestigation as required under the FCRA, EWS chose to bury its head in the sand. It ignored the detailed factual narrative, overlooked the objective evidence, and stood by a designation that had no foundation in fact.

EWS could not possibly have had any document or information in its possession suggesting that Plaintiff engaged in "checking account fraud"—because, as Plaintiff has expressly alleged, that simply did not happen. (Compl. ¶ 30). There were no accusations from Bofa communicated to Plaintiff, no warnings, and no findings that support the serious and damaging label EWS chose to apply. The failure to correct that label in light of clear evidence is not only unreasonable—it is a textbook violation of EWS's duties under the FCRA.

In addition, EWS's own conduct underscores the unreasonableness of its argument. If the circumstances surrounding Plaintiff's deposit and subsequent account closure are—as EWS now claims—"objectively unverifiable" to warrant any

investigation, then why did EWS report Plaintiff for "checking account fraud" in the first place? The logical conclusion is clear: EWS blindly accepted Bofa's reporting without conducting any meaningful due diligence. That is precisely the kind of rubber-stamping the FCRA is designed to prevent. If EWS truly believed this was such a factually or legally convoluted scenario, the legally acceptable course would have been to decline to report—or, at minimum, to remove the damaging notation upon receiving Plaintiff's detailed dispute and supporting documentation. Instead, EWS maintained the "checking account fraud designation", all while simultaneously claiming it could not reasonably verify the underlying facts. That position is not just inconsistent—it is fundamentally inaccurate and misleading under § 1681e(b).

The cases cited by EWS are unpersuasive because they are factually distinguishable from the present case. EWS appears to place particular emphasis on two decisions: *Adams v. Early Warning Services, LLC* and *Martino v. Bank of Am., N.A., et al.* Each will be addressed in turn.

First, in *Adams*, the Court granted judgment on the pleadings in favor of EWS as to the "Checking Account Fraud" notation because the plaintiff had explicitly admitted to depositing a fraudulent check in her Opposition to EWS's Motion for Judgment on the Pleadings. No. 24-60550-CIV-DIMITROULEAS, 2024 U.S. Dist. LEXIS 203505, at *15 (S.D. Fla. Aug. 19, 2024). The Court noted that EWS's report, which included a definition of "checking account fraud," aligned with the undisputed facts, and therefore was not objectively inaccurate or misleading. *Id*.

Here, the situation is entirely different. Mr. Ghuyumjyan has never admitted to depositing a fraudulent check, nor does the Complaint contain any allegation that Bofa accused him of fraud. On the contrary, Plaintiff alleges that he deposited a check from a legitimate business in good faith, with no knowledge or reason to believe there would be an issue. (Compl. ¶¶ 21–30). Plaintiff also does not allege any indication of fraud was ever communicated to him by Bofa, because there was not

KAZEROUNI LAW GROUP, APC

any, and that the account closure notice made no mention of fraud or misconduct of any kind. (Compl. ¶ 26). Additionally, it bears emphasizing that, after the issue with the initial deposit, the repair shop promptly issued an alternative form of payment to Plaintiff—conduct that is entirely inconsistent with an attempt to defraud. (Compl. ¶ 25). Notably, no such mitigating fact was present in *Adams*, making the comparison even more tenuous. EWS's failure to consider this type of easily discoverable context reinforces the conclusion that its investigation fell far short of what the FCRA requires.

In other words, the *Adams* Court's analysis turned heavily on the issue of intent, concluding that because the plaintiff admitted to depositing a "fake check," EWS's reporting—under its own definitions—was not misleading. That reasoning does not apply here. In this case, Plaintiff's intent is not even the central issue— because unlike in *Adams*, Plaintiff never admitted that the check was fraudulent, nor has it been established that the check was invalid at all. To Plaintiff's knowledge, nothing indicated that there was any problem with the check at the time of deposit. Plaintiff has consistently alleged that he deposited the check in good faith and had no reason to suspect any issue with it. (Compl. ¶¶ 25, 30.) At most, Bofa later stated that the check was returned unpaid, but even that explanation leaves open multiple factual possibilities—including insufficient funds or internal error. Those questions are central to the case and remain disputed issues of fact that cannot be resolved at this stage. Unlike in *Adams*, there is no concession of wrongdoing here, and no record establishing that Plaintiff knowingly deposited a fraudulent instrument. Therefore, *Adams* offers no basis for dismissing Plaintiff's claims at this stage.

EWS also relies on *Martino v. Bank of Am., N.A., et al.*, where the Court granted judgment on the pleadings in favor of EWS on FCRA claims arising from the reporting of "checking account fraud." No. 23-cv-61780-WPD, 2024 U.S. Dist.

1   LEXIS 175090 (S.D. Fla. Aug. 19, 2024). However, *Martino* is both factually

2   distinguishable and legally irrelevant to the present case.

3       First, unlike in this case, the plaintiffs in *Martino* explicitly admitted that a

4   fraudulent check was deposited into their account. No. 23-cv-61780-WPD, 2024 U.S.

5   Dist. LEXIS 175090, at *2 (S.D. Fla. Aug. 19, 2024). The complaint itself

6   acknowledged that Plaintiff Martino received a $21,900 check from a fake employer

7   as part of an employment scam and that the check was fraudulent. *Id*. Even more,

8   Bofa had conducted an internal investigation and ultimately closed the account as a

9   result of that confirmed fraudulent transaction. *Id*. at 3. The Court in *Martino*

10  specifically relied on the undisputed fact that the check was fake, and that Bofa had

11  taken affirmative steps to flag the account for fraud. *Id*. at 11. Given those facts, the

12  Court held that EWS's reporting was factually accurate and not objectively

13  misleading. *Id*. at 14-15.

14      Here, in sharp contrast, Plaintiff has never admitted that the check was

15  fraudulent, nor has EWS shown that the check was in fact fraudulent. To the contrary,

16  Plaintiff alleges he received the check from a legitimate business—the repair shop—

17  deposited it in good faith and was never informed by Bofa that any fraud had

18  occurred. (Compl. ¶¶ 25, 30, 33.) The most that can be said is that the check was

19  returned unpaid for reasons that remain unclear, and even that is a question of fact.

20  That is a far cry from an undisputed fraudulent check deposit. In fact, Plaintiff alleges

21  that the repair shop later issued him a replacement payment, a highly unlikely move if

22  it had issued a knowingly fraudulent instrument. This is a critical factual distinction

23  that undermines EWS's reliance on *Martino*.

24      In sum, *Martino* involved an entirely different factual context: an admitted fake

25  check, a bank-confirmed fraud incident, and a consumer reporting entry that

26  accurately reflected those facts. None of those circumstances are present here.

27  Plaintiff has never admitted to any fraud, disputes the basis for the returned check,

28

PLAINTIFF POGHOS GHUYUMJYAN'S OPPOSITION TO DEFENDANT EARLY WARNING SERVICES, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS

1  and has been harmed by a fraud notation that had no foundation. *Martino* offers no

2  basis to dispose of Plaintiff's well-pled claims at the pleading stage. As a result,

3  EWS's Motion must be denied.

4      C. <u>Plaintiff Plausibly Alleges That EWS Failed to Follow Reasonable

5         Procedures to Assure Maximum Possible Accuracy, and Is Not Required to

       Allege Specific Flaws in EWS's Internal Processes at the Pleading Stage</u>

6

7      In the next portion of its Motion, EWS argues that Plaintiff failed to allege

8  sufficient facts to support his claim that EWS did not follow reasonable procedures to

9  ensure the maximum possible accuracy of its reporting. (EWS Mot. at 9). However,

10  this argument misconstrues the required pleading standard. EWS essentially demands

11  that Plaintiff describe the inner workings of EWS—something Plaintiff could not

12  possibly know prior to discovery. That is not, and has never been, required under

13  Rule 8.

14      As the Central District of California recently reaffirmed in *Henderson v.*

15  *Experian Info. Sols., Inc*., a plaintiff asserting a § 1681e(b) claim under the FCRA

16  need only allege the essential elements with sufficient specificity—not prove them or

17  detail the defendant's internal policies. 2025 U.S. Dist. LEXIS 54292, at *5–6 (C.D.

18  Cal. Mar. 21, 2025) (finding that plaintiff's allegations—that EWS prepared and

19  distributed consumer reports containing inaccurate information and failed to follow

20  reasonable procedures to ensure reporting accuracy—were sufficient to state a

21  plausible claim under 15 U.S.C. § 1681e(b), even though they lacked the level of

22  detail EWS desired and noting that EWS could seek further detail on Plaintiff's

23  theory of the claim in discovery). There, the Court rejected an almost identical

24  argument from EWS, holding that a plaintiff's allegation that the defendant published

25  an inaccurate consumer report and failed to use reasonable procedures was sufficient

26  to state a claim. *Id*.

27      Here, the same pleading standard applies—and Plaintiff more than meets it.

28  Rule 8 does not require Plaintiff to allege the specific inner workings of EWS's

KAZEROUNI
LAW GROUP, APC

procedures, nor does it require detailed evidence at this stage. What is required is that "the plaintiff pleads factual content that allows the court to draw the **reasonable inference** that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff has done exactly that. He has set forth, in detail, how he received the check at issue, the source of the funds, and every step he took in connection with the deposit. (Compl. ¶¶ 21–24). There is no indication anywhere in the pleadings that Plaintiff engaged in fraud or any activity that could reasonably be construed as "checking account fraud." To the contrary, Plaintiff specifically alleges that he did not participate in any fraudulent activity and had no reason to believe his actions could be seen as fraudulent. (Compl. ¶ 30).

Moreover, Plaintiff has described the complete dispute he submitted to EWS, which included a detailed narrative and extensive supporting documentation—such as his account statement, ATM deposit receipt, a copy of the check itself, and a letter from Bank of America confirming account closure but making no reference to fraud. (Compl. ¶ 33). None of these materials remotely suggest any fraudulent behavior. Plaintiff also alleges that, in response, EWS merely issued a vague, boilerplate denial, asserting the information was "accurate and complete" without any explanation or indication of meaningful review. (Compl. ¶¶ 36–38). And finally, Plaintiff expressly alleges that EWS violated § 1681e(b) by failing to establish or follow reasonable procedures to ensure maximum possible accuracy in its consumer reporting. (Compl. ¶ 70).

In short, it is unclear what more Plaintiff could be expected to plead. The factual allegations and documentation provided to EWS during the dispute process raise more than a plausible inference that EWS failed to conduct any reasonable investigation or apply procedures aimed at ensuring accuracy. Plaintiff has alleged everything that actually occurred—and there are no hidden facts EWS could have relied upon to justify reporting him for fraud. Plaintiff simply deposited a check from

1  a legitimate source, just as millions of consumers do every day, and was punished by

2  being branded a fraudster with no basis. Had EWS followed reasonable procedures, it

3  would have reviewed the information provided by Plaintiff and recognized that there

4  was no basis to include a "checking account fraud" designation in his file. Instead,

5  EWS chose to uncritically parrot Bank of America's reporting, without verifying the

6  facts or resolving clear discrepancies—exactly what § 1681e(b) prohibits.

7        D. <u>Plaintiff Plausibly Alleges That EWS Failed to Conduct a Reasonable

8           Reinvestigation of Plaintiff's Dispute in Violation of 15 U.S.C. § 1681i</u>

9        Finally, EWS reprises its familiar argument that Plaintiff has failed to plead

10  sufficient facts—but this time under three specific provisions of § 1681i: subsections

11  (a)(1), (a)(4), and (a)(5). However, this argument is no more convincing here.

12  Plaintiff has adequately alleged a violation of § 1681i and stated a plausible claim

13  under each of the cited subsections.

14        Section 1681i governs the manner in which credit reporting agencies conduct

15  reinvestigations of disputed credit information. Pursuant to Section 1681i, a credit

16  reporting agency must reasonably reinvestigate an item in a consumer's credit file

17  once the consumer directly notifies the agency of a possible inaccuracy. 15 U.S.C. §

18  1681i(a)(1)(A). Section 1681i also requires a credit reporting agency to review and

19  consider all relevant information submitted by the consumer with his/her dispute. *Id*.

20  §§ 1681i(a)(4). A credit reporting agency is then required to promptly delete or

21  modify the item based on the results of the reinvestigation. *Id*. § 1681i(a)(5)(A).

22  However, what constitutes a "reasonable reinvestigation" will vary depending on the

23  circumstances of the case. *Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147,

24  1160 (9th Cir. 2009). Though, "[T]he reasonableness of the investigation and whether

25  policies were followed will be jury questions in the overwhelming majority of cases.

26  *Guimond v. Trans Union Credit Info. Co*., 45 F.3d 1329, 1333 (9th Cir. 1995).

27        To state a claim under § 1681i, Plaintiff must sufficiently allege the following:

28  (1) he notified EWS of a disputed item of information; (2) EWS failed to

KAZEROUNI
LAW GROUP, APC

reinvestigate and either record the current status of the disputed information or delete the disputed item from its files; (3) EWS's failure to reinvestigate was negligent or willful; and (4) EWS's failure to reinvestigate caused Plaintiff's injuries. *Acton v. Bank One Corp.*, 293 F. Supp. 2d 1092, 1098-99 (D. Ariz. 2003). In addition, although the FCRA's reinvestigation provision, 15 U.S.C. § 1681i, does not on its face require that an actual inaccuracy exist for a plaintiff to state a claim, the 9th Circuit has imposed such a requirement. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010).

Here, Plaintiff has met each element necessary to state a claim. First, as discussed above, he has alleged that EWS reported him for "checking account fraud" based on a transaction that involved no fraud, no deception, and no indication of wrongdoing. (Compl. ¶¶ 21–30, 33, 59). This notation was both factually inaccurate, misleading, and it caused tangible harm. Plaintiff need not prove the inaccuracy at this stage—he need only plausibly allege it, which he has done.

Second, Plaintiff properly alleged that he submitted a dispute supported by more than just general complaints—he gave EWS the full story and the paperwork to back it up. That included (1) a detailed explanation of what occurred; (2) Bofa's own closure letter, which notably made no mention of fraud; (3) a copy of the returned check; (4) an account statement reflecting no irregularities; and (5) an ATM receipt showing the deposit was processed without issue. (Compl. ¶ 33). These are not conclusory claims—they are factual assertions, supported by documents.

Third, Plaintiff has sufficiently alleged that EWS failed to conduct a reasonable reinvestigation under § 1681i(a)(1). While Plaintiff cannot plead the internal deficiencies of EWS's procedures without discovery, he has alleged enough to raise a strong inference that no meaningful reinvestigation took place. He submitted detailed evidence and a narrative, made clear that no fraudulent conduct occurred, and yet EWS responded only with a generic confirmation that its reporting was "accurate and

KAZEROUNI
LAW GROUP, APC

complete." (Compl. ¶¶ 36–38). These facts support the reasonable inference that EWS ignored or failed to evaluate Plaintiff's materials in violation of § 1681i(a)(4) and failed to delete or modify the disputed notation under § 1681i(a)(5)(A), even though the evidence clearly showed it was inaccurate and unverifiable.

Finally, Plaintiff has plausibly alleged that he suffered concrete harm as a result. The Complaint details how Plaintiff has been denied access to basic financial services—namely, the ability to open a checking account—and the resulting financial and emotional distress. (Compl. ¶¶ 41, 59–60, 64). That harm flows directly from EWS's inaccurate reporting and unreasonable investigation.

As to § 1681i(a)(4), EWS argues that Plaintiff merely offers a bare allegation that it failed to review and consider "all relevant information" provided in Plaintiff's dispute. (EWS Mot. at 12). But that mischaracterizes the Complaint. Plaintiff specifically alleges that he submitted a comprehensive dispute package, including a detailed narrative and multiple documents—such as a Bank of America account statement, ATM deposit receipt, a copy of the check at issue, a closure letter from the bank, and a copy of his driver's license. (Compl. ¶ 33). Plaintiff also explains that none of these documents suggested fraud or misconduct, and yet EWS ignored them, responding only with a generic boilerplate notice that the information was "accurate and complete." (Compl. ¶¶ 36–38). These factual allegations support a strong inference that EWS failed to meaningfully review the dispute materials—as § 1681i(a)(4) requires—because had it done so, it would have seen that the "checking account fraud" notation lacked any factual basis whatsoever. (Compl. ¶ 80). The dispute package contained detailed, corroborating documents that showed no fraud occurred, and no information suggesting otherwise. Whether EWS actually reviewed this information or simply disregarded it is a factual issue that cannot be resolved at this stage.

KAZEROUNI
LAW GROUP, APC

With respect to § 1681i(a)(5), EWS argues that its obligation to delete or modify information was not triggered because it "confirmed" the accuracy of the reporting after its reinvestigation. (EWS Mot. at 12). This argument misstates the law and the Complaint. As the FCRA makes clear, a CRA must delete or modify information if, after a reinvestigation, the disputed item is found to be "inaccurate or incomplete or cannot be verified." 15 U.S.C. § 1681i(a)(5)(A). Plaintiff has alleged enough facts to make a reasonable inference that EWS's "confirmation" was not based on a genuine reinvestigation but a perfunctory rubber stamp of Bofa's initial reporting, without assessing the verifiability of the claim in light of Plaintiff's evidence. This is especially significant because as alleged, EWS had no basis to affirm that conclusion after reviewing Plaintiff's disputes. The Complaint plausibly asserts that EWS either could not verify the fraud claim (because no fraud took place) or ignored clear indications that it was inaccurate, including the documentation provided by Plaintiff in his disputes—either of which would trigger a violation of § 1681i(a)(5).

EWS's suggestion that Plaintiff must detail the precise flaws in its reinvestigation procedures is both legally unsupported and practically unreasonable. The law does not require consumers to possess inside knowledge of a CRA's operations—particularly at the pleading stage before discovery. What the Rule 8 requires, is that Plaintiff allege facts that support a reasonable inference that EWS failed to meet its statutory obligations. Plaintiff has done exactly that. The facts alleged—taken as true—demonstrate that EWS ignored a detailed dispute supported by objective evidence and nonetheless affirmed a damaging and unverifiable "checking account fraud" designation. Therefore, EWS's Motion must be denied.

## IV.  Leave to Amend Should Be Freely Granted

If a motion for judgment on the pleadings is granted, a court should freely give leave to amend when justice so requires. *Finley v. Capital One*, No. 16-cv-01392-

YGR, 2017 U.S. Dist. LEXIS 57645, at *4 (N.D. Cal. Apr. 14, 2017). Here, in the unlikely event that this Court grants EWS's Motion, Plaintiff respectfully requests leave to amend the Complaint to cure any perceived deficiencies.

Dated: April 25, 2025                          Respectfully submitted,

                                               **KAZEROUNI LAW GROUP, APC**

                                               By: */s/ Gor Antonyan,, Esq.*
                                               Gor Antonyan, Esq.
                                               David J. McGlothlin, Esq.
                                               *Attorneys for Plaintiff*